## Case No. 5,378.

### The G. H. STARBUCK.

[5 Ben. 53.] [1]

District Court, S. D. New York. March, 1871.

MARITIME TORT — AIDING SEAMEN TO DESERT — RATIFICATION.

1. The owners of a ship filed a libel against a tug, alleging that while their ship was lying at anchor, ready for sea, the tug came alongside, against the remonstrance of the ship's officers, and took off eight sailors and their baggage, whereby new men had to be obtained, and the ship was detained; and they sought to recover the demurrage and the advance wages paid to the deserters: *Held*, that if the facts constituted a maritime tort, cognizable in the admiralty, yet, in order to hold the tug liable, the libellants must show knowledge or notice to those in charge of the tug that they were committing a wrongful act.

2. Such knowledge or notice was not shown in this case.

3. The bonding of the tug by her owners, when seized under process in this cause, was not an adoption by them of the acts of those on board the tug at the time.

In admiralty.

E. C. Benedict, for libellant.

Beebe, Donohue & Cooke, for claimants and respondents.

BLATCHFORD, District Judge. The libel in this case, which is filed by the libellant as owner of the British ship Perseverance, alleges, that while the ship was lying in the port of New York, on or about the 29th of June, 1864, ready for sea, bound to Liverpool, England, and fully loaded, with her crew on

―――――

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

board, her master being temporarily on shore, the steamtug G. H. Starbuck, about four o'clock, p. m., came alongside of the ship, against the prohibition, warning and remonstrance of the officers in charge of her at the time, and took from on board of her eight of her crew, with their things or baggage, and took them ashore and landed them, and aided them to desert from the ship, so that the libellant was not able to retake them; that said crew were necessary to the ship, and without them, or others in their places, she could not go to sea on her said voyage; that the libellant was compelled to find and ship men, in the place of such eight men, at very high prices, and to lose the sums paid for advance wages and for shipping such eight men, they having been previously shipped, and each paid $100 advance; that the ship was detained by reason thereof for several days, for which delay the libellant is entitled to proper demurrage, and to the expenses incurred thereby; that he is also entitled to the expense of procuring and shipping new men, and to the damage caused by the wrong of the steamtug and those in charge of her for her owners; and that he claims $3,000, or thereabouts. The prayer of the libel is for a recovery against the steamtug and her owners.

The answer of the claimants of the tug, who are the respondents sued, avers that the respondent Mills was at the time the master of the tug; that her business was that of towing vessels, and nothing else; that, at the time mentioned in the libel, her master was absent from her on shore; that she was on that day engaged in towing mud scows, laden with mud, from the Atlantic dock, Brooklyn, to near Bedlow's Island; that the pilot who was left temporarily in charge of her had no right to employ her in any other business; that while on the trip and when passing near the ship, which was lying at anchor (but whether bound in or out, or whether ready for sea or otherwise, those on board of the tug had no knowledge), the tug was hailed by some person from the quarter-deck of the ship, stating that there were two persons on board who desired to get on shore, and wanted the tug to take them; that the pilot, without any right so to do, did, without any objections or remonstrance on the part of any one on board of the ship, round to alongside of the ship, when four men, with some baggage, jumped on to the steamtug, and were carried to the shore; that no objections were made to the said parties going on shore, and only one other man and a woman were seen on board of the ship; and that those on board of the tug had no knowledge, or notice, or information that there was any claim upon the men, and acted in good faith. The answer denies the jurisdiction of the court, and alleges that if the facts averred in the libel are true, the claim does not create any lien on the tug.

If it be conceded that the facts set forth in the libel constitute a marine tort, cognizable in the admiralty, within the principles laid down in Plummer v. Webb [Case No. 11,233], Sherwood v. Hall [Id. 12,777], and Philadelphia, W. & B. R. Co. v. Philadelphia & Havre de Grace Steam Towboat Co., 23 How. [64 U. S.] 209, still, in order to make the owners of the steamtug, and, through them, the tug herself, liable to respond in this case, it is necessary that the libellants should show knowledge by or notice to those in charge of the tug at the time, that they were committing a wrongful act. Sherwood v. Hall, above cited; Cutting v. Seabury [Case No. 3,521]; The Platina [Id. 11,210]. The libel alleges no other knowledge or notice except that what was done by the tug was done against the prohibition, warning and remonstrance of the officers in charge of the ship at the time; and the libellants have, by testimony, sought to prove such allegation as to prohibition, warning and remonstrance. The gist of the action is that the seamen were withdrawn from the power of the officers of the ship, by the tug, by abduction. This requires that a wrongful purpose should be brought home to those in charge of the tug. I think the libellants have failed to make out affirmatively such wrongful purpose, or to show knowledge by or notice to the persons managing the tug, that the departure of the seamen was against the will of those in charge of the ship. Even if it be conceded to be proved that the tug was hailed from the ship not to come to the ship, still, it is not shown that the hail was understood by the tug, or that any reply was made to it, indicating that it was understood.

I do not think a case like the present falls within the classes of cases where a vessel and her owners are held responsible, as in cases of collision and injuries from negligent acts and omissions of duty, for the torts of those placed in charge of the vessel, in acts relative to the service of the vessel, and within the scope of their employment. It is an essential element of a case like this, that there should be wilfulness and a wrongful purpose, and not merely negligence, inferable more or less from the consequences of the act or omission alleged.

The fact that the owners of the tug procured her release from seizure by bonding her after her arrest in this suit, is urged as an adoption and approval by them of the acts of those in charge of the tug. It can have no such effect, even though the bonding took place after the libel was filed. The exercise of the right or privilege of bonding a vessel seized, in no manner concludes or prejudices the owner in respect to the merits of the cause of action. And, in this case, even if the acts were to be regarded as those of the owners as personally present, such acts would equally have to be shown to have been done wilfully and with a wrongful purpose.

The libel is dismissed, with costs.